**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

| | |
|---|---|
| MINH DUC NGO NGUYEN, | Case No. SACV 26-1210-AS |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MARKWAYNE MULLIN, et al., | |
| Respondents. | |

**INTRODUCTION**

On May 14, 2026, Petitioner Minh Duc Ngo Nguyen ("Petitioner"), who is represented by counsel and has been detained by U.S. Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, since April 22, 2026, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), seeking immediate release, among other relief, on the ground that his detention violates the Due Process Clause of the Fifth Amendment, as well as the Immigration and Nationality Act ("INA"), and that he is entitled to release because he was detained without prior notice or compliance with 8 C.F.R. § 241.13

and § 241.4 and his removal to Vietnam is not reasonably foreseeable. (Dkt. No. 1). Petitioner also alleges that he suffers from a serious medical condition that has already required hospitalization. (Id. at 7-9). The Petition is accompanied by an Ex Parte Motion for a Temporary Restraining Order ("TRO") seeking the same relief due to his medical condition and unlawful detention. (Dkt. No. 3).

On May 21, 2026, Respondents filed an Answer to the Petition and a supporting declaration of deportation officer Dade Gomez ("Gomez Decl.") and exhibits. (Dkt. No. 11). Petitioner then filed a Traverse on May 25, 2026. (Dkt. No. 12).

For the reasons stated below, it is recommended that the Petition be granted and that Respondents be ordered to release Petitioner under the same conditions to which he was subject prior to his re-detention, and that Respondents be further enjoined and restrained from re-detaining Petitioner without compliance with 8 C.F.R. § 241.4(*l*)(1) and § 241.13(i).[1]

**BACKGROUND**

Petitioner arrived in the United States from Vietnam with his mother and sister on August 9, 1991, when he was nineteen years old. (Petition at 2, 6; Gomez Decl. ¶ 5). He became a lawful

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 4, 6, 8). Because the Court grants the Petition, the TRO motion is denied as moot.

permanent resident a year later. (Petition at 6). On March 8, 1994, he was convicted in California of burglary (Cal. Penal Code § 460(b)) and sentenced to sixty days in jail. (Gomez Decl. ¶ 7). A few months later, on July 26, 1994, he was convicted in Massachusetts of armed robbery (Mass. Gen. Laws Ann. ch. 265, § 17) and sentenced to eleven years in prison. (Gomez Decl. ¶ 6).

On September 25, 1995, while serving the latter sentence, Petitioner was served with a Notice to Appear and placed into removal proceedings. (Gomez Decl. ¶ 8). On October 20, 1997, an immigration judge ordered him removed to Vietnam. (Petition at 7; Gomez Decl. ¶ 9, Ex. A). The Board of Appeals ("BIA") denied his appeal on June 10, 1998, making the removal order final. (Petition at 7; Gomez Decl. ¶ 10, Ex. B).

At that time, Vietnam was not accepting deportees from the United States who had arrived before July 12, 1995. (Petition at 7). Thus, after serving his state prison sentence, he was released from immigration custody on an Order of Supervision ("OSUP") on February 12, 2001. (Petition at 7; Gomez Decl. ¶ 11).

Since then, Petitioner has complied with all the terms of his OSUP and has been a contributing member of his community. (Petition at 7). He lives with his two daughters and his sister in Westminster, California. (Id. at 7). His older daughter is twenty years old and attends the University of California at Irvine, and his younger daughter is eighteen years old and attends Cerritos

College. (Id. at 7). Petitioner is an active member of his church, Blessed Sacrament Church in Westminster. (Id. at 7).

Petitioner has a very serious medical condition due to past head trauma, which causes frequent seizures. (Id. at 2, 7). This prevents him from being able to work or drive. (Id. at 7). He takes several daily medications for the condition and sees his doctor every three months. (Id. at 2, 7). During seizures, he struggles to breathe, and his family must watch him closely and "wake him up" when the seizure ends, and he needs medical attention on occasions when he cannot be awakened, which last happened in December 2025, when his sister took him to the hospital after being unable to wake him at the end of a seizure. (Id. at 8). The seizures become more frequent when Petitioner is under stress. (Id. at 8). He had a seizure following his previous ICE check-in on April 1, 2026, and another one on the morning of his next check-in on April 22. (Id. at 8).

At that April 22 check-in, at the ICE Field Office in Santa Ana, Petitioner and his counsel were asked for documentation of Petitioner's medical conditions, which they provided in the form of a letter from his doctor. (Id. at 8). The ICE officer responded that they had the ability to take care of Petitioner. (Id. at 9). The officer then handcuffed him and said only that he was being detained because of his final order of removal. (Id. at 9). Petitioner was issued a Notice of Revocation of Release indicating that ICE Enforcement and Removal Operation ("ERO") was seeking a travel document from the Vietnamese government for purposes of his

removal. (Gomez Decl. ¶ 13, Ex. C). Petitioner was also given an informal interview to afford him the opportunity to respond to the revocation of OSUP. (Id. ¶ 13, Ex. D). Petitioner was taken to the Adelanto ICE Processing Center, where he remains at this time. (Petition at 2, 4, 9).

On the night of April 28, 2026, while at Adelanto, Petitioner fell and hit his head during a seizure and was hospitalized for five days. (Id. at 9). During that time, his sister and daughters were unable to locate him and were not told why he needed medical care. (Id. at 9). In detention, Petitioner is not given his medication at the times when he normally takes them at home. (Id. at 9).

On May 5, 2026, ERO Travel Unit conducted a travel interview for Petitioner to obtain a travel document. (Gomez Decl. ¶ 14). The next day, ERO submitted a travel document request to the Vietnamese embassy in Washington, DC, and the request remains pending. (Id. ¶ 15, Ex. F). ERO allegedly is prepared to expeditiously remove Petitioner to Vietnam once a travel document is obtained. (Id. ¶ 17).

**DISCUSSION**

For the reasons explained below, Petitioner merits immediate release from ICE custody because Respondents failed to demonstrate sufficient grounds to re-detain him in April 2026, and his removal is not reasonably foreseeable.

5

Petitioner is currently being detained under 8 U.S.C. § 1231(a), which "governs the detention, release, and removal of individuals 'ordered removed.'" Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). Under § 1231(a), the Attorney General is directed to remove aliens subject to final orders of removal within ninety days (the "removal period"), and is further directed to detain such aliens during the removal period. 8 U.S.C. § 1231(a)(1)-(2); Arteaga-Martinez, 596 U.S. at 578. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)); Clark v. Martinez, 543 U.S. 371, 377 (2005); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("The post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" (citations omitted)). Petitioner falls within at least one of these categories. See 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is . . . removable under section . . . 1227(a)(2) . . . of this title . . . may be detained beyond the removal period[.]").

6

"Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue for those who fall within the four designated statutory categories." Arteaga-Martinez, 596 U.S. at 579. But in Zadvydas, the Supreme Court "applied the canon of constitutional avoidance and determined that 'read in light of the Constitution's demands,' § 1231(a)(6) 'does not permit indefinite detention' but instead 'limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.'" Arteaga-Martinez, 596 U.S. at 579 (quoting Zadvydas, 533 U.S. at 689). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 689; Clark v. Martinez, 543 U.S. at 378. "[T]he presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" Clark v. Martinez, 543 U.S. at 378 (quoting Zadvydas, 533 U.S. at 701). In other words, the "6-month presumption . . . does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Zadvydas "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1059 (9th

7

Cir. 2003) (quoting Zadvydas, 533 U.S. at 701). If that burden is met, "the Government must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701.

Once released from custody, a noncitizen subject to a final order of removal must comply with certain conditions of release. See 8 U.S.C. § 1231(a)(3), (6). The revocation of that release is governed by 8 C.F.R. § 241.4(*l*)(1) and § 241.13(i), which provide that ICE may revoke release when a noncitizen violates a condition of their release, 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(1), or when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Section 241.4(*l*)(2) also gives certain designated officials discretion to revoke release.[2]

---

[2] This provision states:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official: (i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8

The government is required to follow these revocation procedures, and the failure to do so renders a detainee's re-detention unlawful. See, e.g., Minh Xuan Nguyen v. Noem, 817 F. Supp. 3d 889, 899 (C.D. Cal. 2025) ("A growing number of courts — including this one — have found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release."); Morales Sanchez v. Bondi, 2025 WL 3651899, at *3 (C.D. Cal. Dec. 5, 2025) ("[T]he Court is persuaded that the regulations constitute binding legal requirements for ICE's revocation process.").

Here, Respondents fail to demonstrate that any "changed circumstances" justified the revocation of Petitioner's release on April 22, 2026. At the time of his April 22 arrest, as Respondents point out, Petitioner was served with a Notice of Revocation which states that his release was revoked pursuant to 8 C.F.R. § 241.13(i) because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future," as "ICE is seeking a travel document to effect [Petitioner's] expeditious removal to Vietnam." (Gomez Decl., Ex.

---

8 C.F.R. § 241.4(*l*)(2) (emphases added). Respondents have not argued that this provision applied here, nor have they suggested that the appropriate officials (i.e., ICE's present equivalents of the "Executive Associate Commissioner" and "district director" positions) exercised their authority in this matter. See also Hung T. Nguyen v. Noem, 2026 WL 790881, at *6 (C.D. Cal. Mar. 16, 2026) ("To the extent Petitioner's revocation was a discretionary act pursuant to Section 241.4, Respondents do not establish the decision was issued by a properly authorized official." (citing Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 159-62 (W.D.N.Y. 2025))).

C). Yet, notwithstanding this statement, Respondents have not shown that any steps had been taken to "seek[] a travel document" at that time. Respondents state, rather, that a travel document was requested for Petitioner on May 6, 2026, two weeks after he was re-detained. (Gomez Decl. ¶ 15, Ex. F). As Petitioner points out, 8 C.F.R. § 241.13, makes clear that any "changed circumstances" justifying a noncitizen's re-detention must be present at the time that the revocation of release occurs. (Traverse at 5). The government's request for travel documents made after revocation of release did not constitute "changed circumstances" to justify revocation at the time the revocation occurred. See also Moua v. Warden, 2026 WL 1158841, at *2 (E.D. Cal. Apr. 29, 2026) (finding same); Vardumyan v. Noem, 2026 WL 530759, at *4 (C.D. Cal. Feb. 20, 2026) (same); Shameyan v. Bondi, 2026 WL 330684, at *5 (C.D. Cal. Feb. 5, 2026) (same); Uzzhina v. Chestnut, 2025 WL 3458787, at *4 (E.D. Cal. Dec. 2, 2025) (same).

Relatedly, Respondents have failed to support their purported determination that Petitioner's removal to Vietnam was (or is) significantly likely in the "reasonably foreseeable future." Although Respondents suggest that under Zadvydas the burden is on Petitioner to show that his removal is not reasonably foreseeable (Answer at 6-7), the burden is on the government when it revokes release to effectuate removal, under 8 C.F.R. § 241.13(i)(2). See, e.g., Espada v. Doe, 2026 WL 181539, at *5 (C.D. Cal. Jan. 20, 2026) ("'[T]he burden-shifting framework from Zadvydas does not apply' where the petitioner has already been 'issued a final order of removal, detained, and subsequently released on an' [order of

10

supervision].” (quoting Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025))), report and recommendation adopted, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026); Roble v. Bondi, 803 F. Supp. 3d 766, 772 (D. Minn. 2025) (“[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future[.]”).

Petitioner notes that Vietnam “has had a longstanding policy of not accepting pre-1995 Vietnamese immigrants who had been ordered removed from the United States.” (Petition at 9-10). He acknowledges that in 2020 the United States and Vietnam entered into a diplomatic agreement, memorialized in a Memorandum of Understanding (“2020 MOU”), under which Vietnam agreed to accept pre-1995 arrivals on a case-by-case basis.[3] (Petition at 10). But even if Petitioner is removable under the 2020 MOU, “Vietnam has total discretion whether to accept particular non-citizens[,] so the 2020 [MOU] is insufficient on its own to show a significant likelihood of removal.” Pham v. Noem, 2025 WL 3763374, at *4 n.3 (C.D. Cal. Dec. 22, 2025) (citing Nguyen v. Hyde, 788 F. Supp. 3d at 151; Hoac v. Becerra, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025); Vu v. Noem, 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6,

---

[3] See 2020 Memorandum of Understanding between [DHS] and the Ministry of Public Security of the Socialist Republic of Vietnam § 8(3), (4) (November 21, 2020), https://www.nguoi-viet.com/wp-content/uploads/2021/07/Vietnam-2020-MOU-redacted-1.pdf; see also Bao Hoang Tang v. Blanche, 2026 WL 1334839, at *3 (C.D. Cal. May 8, 2026) (summarizing “the United States’ complex history with Vietnam and the countries’ evolving diplomatic agreements over the past few decades,” including the 2020 MOU).

2025)). Respondents assert that recently they are "[c]onsistently [s]uccessful" in removing detainees to Vietnam, which they support by citing several cases from this district court that were mooted by the government's removal of the petitioner to Vietnam. (Answer at 9-10 (citing Huynh v. Semaia, Case No. CV 24-10901-MRA (DFM); Le Van Minh v. DHS, Case No. EDCV 25-2245-HDV (JDE); Tan Minh Vo v. DHS, Case No. EDCV 25-2791-SVW (MBK); Tu Khong v. Adelanto ICE Processing Center Warden, Case No. EDCV 25-3116-MCS (KS); Hien Quang Vo v. Bowen, Case No. EDCV 25-2880-KK (SSC); Nen Van Tran et al v. Noem, Case No. EDCV 25-3166-SB (PVC); Khoanh A. Lam v. Noem, Case No. EDCV 25-3344-CV (RAO))). However, "beyond this anecdotal evidence, the government provides no statistics regarding how often it is requesting and receiving travel documents from Vietnam, and no information about whether the people for whom it is receiving those documents are relevantly similar to [Petitioner]." Minh Xuan Nguyen, 817 F. Supp. 3d at 897. Respondents thus fail to show a likelihood that Petitioner will have a similar outcome. See also Trieu v. Mullin, 2026 WL 1045194, at *7 (C.D. Cal. Apr. 17, 2026) ("[T]he fact that the Government has been able to remove some pre-1995 Vietnamese immigrants does not show that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future." (emphases in original)); Ton v. Noem, 2025 WL 4058327, at *6 (C.D. Cal. Dec. 22, 2025) ("Evidence that one person has recently been repatriated, in a vacuum, does little to support the Government's position without supporting evidence of the percentage of travel document requests for pre-1995 Vietnamese immigrants that are approved or why [petitioner's] request for

travel documents is similarly situated to Huynh's in relevant respects.").

"As other courts have noted, 'the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted' and appears to depend on personalized historical and biographical data." Ton, 2025 WL 4058327, at *6 (quoting Nguyen v. Scott, 796 F. Supp. 3d 703, 722–23 (W.D. Wash. 2025)); see also Tang, 2026 WL 1334839, at *4 ("In the post-[2020 MOU] era, Vietnam has overwhelmingly declined to issue travel documents for pre-1995 immigrants."). As such, the mere fact that a request for Petitioner's travel documents was sent on May 6 to the Vietnamese embassy in Washington, DC, is not enough to show that Petitioner's removal is reasonably foreseeable. See, e.g., Hung v. Marin, 2026 WL 712220, at *5 (C.D. Cal. Mar. 5, 2026) (government's recent request to Vietnam for travel documents was insufficient to satisfy its burden to establish that removal was reasonably foreseeable); Ton, 2025 WL 4058327, at *5 ("The mere request for travel documents [from Vietnam] that the Government believes will issue within 30 days is not enough to rebut the presumption in this context."); Tran v. Scott, 2025 WL 2898638, at *4 (W.D. Wash. Oct. 12, 2025) (evidence that travel document had been requested was insufficient where there was no data about the proportion of other pre-1995 Vietnamese immigrants for whom travel document requests were successful).

Accordingly, as other courts have concluded in similar circumstances, Petitioner is entitled to release from custody among

13

other relief sought in the Petition. See, e.g., Nguyen Truong v. Mullin, 2026 WL 1047908, at *7-8, 10 (C.D. Cal. Apr. 15, 2026); Hung, 2026 WL 712220, at *5-6, 8; Minh Xuan Nguyen, 817 F. Supp. 3d at 896-97, 900.

**ORDER**

For the reasons discussed above, IT IS ORDERED that (1) the Petition is GRANTED; (2) Respondents shall immediately release Petitioner under the same conditions to which he was subject prior to his re-detention; (3) Respondents are enjoined and restrained from re-detaining Petitioner without compliance with 8 C.F.R. § 241.4(l)(1) and § 241.13(i); and Petitioner's TRO motion (Dkt. No. 3) is DENIED as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 27, 2026

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

14